UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ANTOINE SHANNON,

Defendant.

Case # 14-CR-6136-FPG

DECISION AND ORDER

# INTRODUCTION

On March 26, 2021, Defendant Antoine Shannon, an inmate incarcerated at Federal Correctional Institution Loretto ("FCI Loretto"), filed a Motion for Compassionate Release due to the COVID-19 pandemic. ECF No. 933. The Government opposes the motion. ECF No. 936. For the reasons that follow, Defendant's motion is DENIED.

# BACKGROUND

On November 4, 2015, Defendant pled guilty to conspiracy to possess with intent to distribute, and distribute, 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846 which carried a minimum sentence of imprisonment of 20 years and a maximum term of imprisonment of life. *See* ECF No. 342. Despite the guilty plea, the government agreed to allow Defendant to remain out of custody for purposes of engaging in proactive cooperation. After an arrest on state drug charges on June 20, 2016, the Government filed a motion to revoke Defendant's release. ECF No. 267.

On November 22, 2016, the Court sentenced Defendant to 240 months' imprisonment with the Bureau of Prisons ("BOP") followed by ten years supervised release pursuant to the Plea Agreement. ECF No. 340. After testifying at a trial on behalf of the Government, the Government filed a motion for a reduction of Defendant's sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. *See* ECF No. 853. The motion was granted, and on February 14, 2020,

the Court reduced Defendant's sentence to 87 months' imprisonment followed by ten years' supervised release. ECF No. 868.

Defendant's projected release date is June 29, 2022.[1]

## DISCUSSION

I.  **The Compassionate Release Framework**

Defendant seeks release under the First Step Act's "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A). This statute provides an exception to the general rule that a court may not modify a term of imprisonment once it has been imposed. *United States v. Lucas*, No. 15-CR-143, 2020 U.S. Dist. LEXIS 75428, at *3 (W.D.N.Y. Apr. 29, 2020) (citation, internal quotation marks, and brackets omitted). Under § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if a defendant can show that (1) he has met the statutory exhaustion requirement; (2) "extraordinary and compelling reasons" warrant a reduction; (3) he is not a danger to the community; and (4) a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *Lucas*, 2020 U.S. Dist. LEXIS 75428 at *3-4; *see also* U.S.S.G. § 1B1.13 (the United States Sentencing Guidelines Policy Statement on compassionate release).

Because courts consider the § 3553 factors when sentencing defendants, in the context of a motion for compassionate release, the task is not to "second guess or to reconsider whether the original sentence was just," but to assess whether "the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (discussing legislative history of provision). In other words, the issue is whether the original § 3553 factors "outweigh the

---

[1] As set forth in more detail below, Defendant's motion asserts that his release date is April 2, 2024. However, after issues of credited time were brought to the attention of the BOP, the date has since been adjusted.

'extraordinary and compelling reasons' warranting compassionate release," and, in particular, "whether compassionate release would undermine the goals of the original sentence." *Id.* at 431.

## II.     Whether Extraordinary and Compelling Reasons Exist

Here, the "extraordinary and compelling" reason that Defendant identifies as justifying release are (1) the inaccuracies in the calculation of his release date; (2) his hypertension which makes him more susceptible to suffering severe complications from COVID-19; and (3) the heightened risk of contracting COVID-19 while incarcerated at FCI Lorretto. *See* ECF No. 933.

First, Defendant's Motion for Compassionate Release indicates his release eligibility date is April 2, 2024. However, Defendant asserts that had he been admitted to the BOP's drug program as requested by the Court, he would have been eligible for release to a halfway house in February 2021. ECF No. 933 ¶¶ 11-12. Defendant also asserts that after serving time in Attica Correctional Facility on state charges, he was received by the BOP and was not given credit for the time served in state custody despite this Court's order. *Id.* ¶¶ 6-10. Thus, Defendant claims he is being held far longer than intended.

While it is true that the Court indicated at sentencing that, if eligible, Defendant was recommended to participate in substance abuse programs, it appears Defendant did not qualify for such program due to a lack of evidence to show a pattern of substance abuse in the prior year. *See* ECF No. 937 at 2. While the Court can suggest participation in a drug rehabilitation or treatment program, it is ultimately up to the BOP to determine whether a defendant qualifies for such program. *Levine v. Apker*, 455 F.3d 71, 83 (2d Cir. 2006) ("The BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility.") (citation omitted); *see also Wilson v. Baird*, No. 3:11-cv-1304, 2012 WL 2154209, at *3 (D. Conn. June 13, 2012) ("[I]t is well settled that there is no constitutional or statutory right to

participate in a drug rehabilitation program."). This is simply not a basis upon which the Court may grant early release.

Moreover, since the filing of Defendant's motion, the BOP has credited Defendant's state time and his release date has been moved up accordingly. ECF No. 937 at 2. Specifically, as indicated by United States Probation and Pretrial Service's Memorandum, Defendant has been credited for 211 days of time served, making his new release date June 29, 2022. *Id.* Probation notified Defendant's counsel and the Assistant United States Attorney of the modification of the release date. *Id.* While the Court is sympathetic to the error in calculation, such an error is not sufficiently compelling to warrant early release, especially considering such errors have been corrected.

"[A] defendant's pre-existing health conditions . . . in combination with the increased risks of COVID-19 in prisons" may, in some cases, "constitute 'extraordinary and compelling reasons' warranting relief." *United States v. Delgado*, No. 3:18-CR-17-(VAB)-1, 2020 U.S. Dist. LEXIS 84469, at *6 (D. Conn. Apr. 30, 2020). Courts "base[] their resolution of compassionate release requests in the COVID-19 era on whether the inmate-movant ha[s] an underlying medical condition that place[s] her or him at risk of developing a severe case of the illness." *United States v. Lagan*, No. 1:18-CR-0283 (LEK), 2020 U.S. Dist. LEXIS 86330, at *8 (N.D.N.Y. May 11, 2020). "In making such a determination, numerous courts have looked to guidelines issued by the Centers for Disease Control and Prevention ("CDC") as to what conditions place an individual at higher risk for severe illness." *Id.* (citation and internal quotation marks omitted).

Defendant alleges that he suffers from hypertension and sets forth a variety of assertions regarding the increased risk of suffering severe COVID-19 symptoms due to his hypertension. *See* ECF No. 933 ¶¶ 17-18. It appears from Defendant's records that, although he indeed suffers from

hypertension, he remains stable on his current treatment regimen as administered by the BOP. In fact, according to BOP records, Defendant is classified as "Medical Care Level 2," which means he is a "stable outpatient[] requiring at least quarterly clinician evaluations." ECF No. 937 at 3.

Moreover, while the CDC has identified hypertension as a condition that can increase an individual's risk of severe illness from COVID-19, *see People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 5, 2021) [hereinafter "CDC Risk Article"], that does not appear to have been the case for Defendant. The Court notes that Defendant tested positive for COVID-19 on December 7, 2020. According to the medical records, he was cleared of the virus around December 15, 2020, without indication of any lingering or severe symptoms. Moreover, Defendant has since been fully vaccinated. ECF No. 937-10 at 8.

Regarding his incarceration, Defendant argues that he has a high risk of contracting COVID-19 at FCI Loretto. He alleges that the BOP cannot effectively manage COVID-19 as evidenced by the rapid spread of the disease through the facilities generally, the crowded facility he is in, and the inadequate testing available. ECF No. 933 ¶¶ 22-23. According to Defendant, as of March 25, 2021, the BOP reported 15 active cases of COVID-19 among staff. *Id.* ¶ 14. However, more recent data from the BOP does not suggest that FCI Loretto is currently facing an outbreak, let alone an uncontrolled one: as of May 5, 2021, there are only five active COVID-19 cases among inmates and one active case amongst staff. *See COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus/ (last visited May 5, 2021). Moreover, Defendant, as well as over 350 other inmates at FCI Lorretto, have been fully vaccinated against the virus, with that number likely to increase. *Id.*

The Court is "mindful of the fact that conditions of confinement—sharing small cells, eating together, using same bathrooms and sinks, delays in medical evaluation and treatment, and rationed access to soap—make prisons more potentially conducive to the transmission of COVID-19 than elsewhere." *United States v. Murph*, No. 08-CR-322 (JMA), 2020 U.S. Dist. LEXIS 105100, at *7 (E.D.N.Y. June 16, 2020). However, "COVID-19 does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Weiskopf*, No. 19-CR-6093-FPG, 2020 U.S. Dist. LEXIS 125460, at *9 (W.D.N.Y. May 14, 2020) (citation and internal quotation marks omitted)). To demonstrate entitlement to release, a defendant need not "establish his increased risk with mathematical precision," but he should at least "provide a reasonable estimate of the risk he faces." *Id.* at *8. As one court recently put it, asserting that a defendant's health conditions "may," or even "likely," increase the risk associated with COVID-19 is still "a step or two from stating to a degree of scientific certainty that [a risk] does exist." *United States v. Delgado*, No. 1:18-cr-902-GHW, 2020 U.S. Dist. LEXIS 166305, at *11 (S.D.N.Y. Sept. 11, 2020) ("[Defendant] has shown that his medical conditions are associated with the possibility of increased risk, but not the degree of possibility; or the extent of the incremental risk. Those gaps are meaningful. The Policy Statements do not support the conclusion that any degree of increased risk is sufficient to the requisite showing of 'extraordinary and compelling circumstances.'").

Defendant has not satisfied his burden of showing entitlement to release here. While the Court is sympathetic to the inaccuracies in Defendant's release date calculation, the time served has since been credited. Moreover, despite his underlying health issues and the risks posed by confinement, Defendant has already recovered from the COVID-19 virus, seemingly without

6

issue, and has been fully vaccinated.  Thus, he cannot demonstrate extraordinary and compelling reasons for his release.

### III. Whether Compassionate Release Would Undermine the Goals of the Original Sentence

Even if Defendant could establish the existence of extraordinary and compelling circumstances, the Court would nevertheless conclude that a reduction of his term of imprisonment is inconsistent with the factors set forth in § 3553(a).

Under § 3553(a), a court must consider the following factors when it imposes a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) [the kinds of sentence and sentencing range provided for in the Sentencing Guidelines]
> (5) any pertinent [Sentencing Commission policy statement]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 U.S. Dist. LEXIS 64418, at *7 (E.D.N.Y. Apr. 10, 2020) (quoting 18 U.S.C. § 3553(a)).

The Court weighed these factors when it imposed Defendant's original term of imprisonment.  The nature of Defendant's offense is very serious:  he pled guilty to conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine.  ECF No. 342.  Pursuant to the Plea Agreement, Defendant's mandatory minimum sentence was 20 years.  *Id.* This sentence was later reduced to only 87 months—an almost 13-year reduction—due to

7

Defendant's cooperation. Still, the Court imposed a substantial sentence that reflected its analysis of the § 3553(a) factors at that time.

For all the reasons considered at sentencing, Defendant's original sentence was and remains appropriate, notwithstanding the pandemic. Defendant's projected release date is June 29, 2022—still over a year away. Reducing his already almost 13-year reduced sentence by another year would not substantially satisfy the purposes of his original sentence, as it would fail to "reflect the seriousness of the offense, []promote respect for the law, [or] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). While "[a] just punishment should not include an unacceptable risk of exposure to COVID-19 or any potentially lethal disease," *United States v. Vence-Small*, No. 3:18-cr-00031 (JAM), 2020 U.S. Dist. LEXIS 80576, at *11 (D. Conn. May 7, 2020), neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment.

Accordingly, the Court finds that Defendant has not met his burden of showing that release is warranted.

## CONCLUSION

For the reasons set forth above, Defendant's motion for compassionate release, ECF No. 933, is DENIED.

IT IS SO ORDERED.

Dated: May 6, 2021
      Rochester, New York

                                          HON. FRANK P. GERACI, JR.
                                          Chief Judge
                                          United States District Court